UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

SMC CONSTRUCTION CO.,

Plaintiff,

v.

REX MOORE GROUP, INC.;

Defendants.

Case No. 3:17-cv-00470-LRH-VPC

ORDER

Before the court is plaintiff SMC Construction Co.'s ("SMC") motion to release or reduce mechanic's lien pursuant to Nevada Revised Statutes ("NRS") Section 108.2275. ECF No. 5. Defendant Rex Moore Group, Inc. ("Rex Moore") filed an opposition (ECF No. 15) to which SMC replied (ECF No. 20). Rex Moore then filed a sur-reply with the court's leave. ECF No. 24.

**I.     Facts and Procedural Background**

At its core, this action involves a dispute between a general contractor and a subcontractor for payment of work performed on a construction project. Plaintiff SMC initiated the underlying action against defendant Rex Moore in order to settle a construction contract dispute and, specifically, to release or reduce a mechanic's lien Rex Moore recorded against the construction project in the amount of $2,117,602.78.

In the summer of 2015, non-party Edgewood Companies ("Edgewood") contracted with SMC to build a high-end hotel in Lake Tahoe, Nevada, known as the Edgewood Tahoe Resort ("the project"). As the prime contractor for the project SMC solicited bids from subcontractors

1

for various parts of the project. Rex Moore bid for, and won, the subcontract to provide the electrical system and electrical fixtures for the project. On September 3, 2015, SMC and Rex Moore then entered into a subcontract for the electrical work under which Rex Moore was to be paid $5,464,364 ("the subcontract").[1] The subcontract provided that Rex Moore was to be paid monthly upon application of time and expense records with a final ten percent (10%) withheld retention payment due upon ultimate completion of the project. *See* ECF No. 5, Ex. 4 §III(B). Further, as part of the subcontract, SMC and Rex Moore agreed that Rex Moore would not be entitled to any monetary damages or other compensation or damages resulting from delays to the project. *Id*. §II(G). Finally, SMC and Rex Moore agreed that the subcontract could only be amended or modified by written change orders. *Id*. §IV(A).

During the winter of 2016/2017 the project experienced a series of construction delays which required an acceleration of work if the project was to be completed in a timely manner. In January 2017, SMC allegedly ordered the subcontractors, including Rex Moore, to accelerate their work to get the project finished. As part of the project acceleration, SMC and Rex Moore entered into a series of twenty (20) different written change orders to compensate Rex Moore for the project acceleration and address certain additional project expenses.[2] Pursuant to these written change orders to the subcontract, Rex Moore was to be paid a total of $6,184,183.00 for completion of the electrical work on the project.

On March 29, 2017, while the parties were continuing to enter into change orders for the subcontract, Rex Moore submitted a claim to SMC for over $927,000 in additional damages resulting from delays on the project including damages for weather delays, out of sequence work costs, increased fixture costs, breach of contract, and Rex Moore's inability to take on other work.[3] Edgewood and SMC rejected Rex Moore's claim for additional compensation outside of the agreed upon contract price. Subsequently on July 10, 2017, Rex Moore recorded a mechanic's lien on the project in the amount of $2,117,602.78. ECF No. 1, Ex. 1. Rex Moore

---

[1] A copy of the subcontract agreement is attached as Exhibit 4 to SMC's motion to release or reduce mechanic's lien. ECF No. 5, Ex. 4.
[2] A complete history of the change orders along with copies of the change orders is attached as Exhibit 7 to SMC's motion to release or reduce mechanic's lien. ECF No. 5, Ex. 7.
[3] A copy of Rex Moore's initial claim for additional compensation is attached as Exhibit 8 to SMC's motion to release or reduce mechanic's lien. ECF No. 5, Ex. 8.

calculated its lien as follows: $5,464,364 under the original contract plus $1,941,710.74 in additional work (including approved change orders up to that time) and damages for breach of contract minus $5,288,471.93 for payments received for a lien of $2,117,602.78. *Id*.

In response, on July 20, 2017, SMC initiated the underlying complaint against Rex Moore in state court alleging three causes of action: (1) lien expungement pursuant to NRS § 108.2275; (2) construction fraud; and (3) declaratory relief. ECF No. 1, Ex. 2. On August 8, 2017, Rex Moore removed the action to federal court on the basis of diversity jurisdiction. *See* ECF No. 1. Thereafter, on August 9, 2017, SMC filed the present motion to release or reduce mechanic's lien pursuant to NRS § 108.2275. ECF No. 5. A hearing on SMC's motion to release or reduce mechanic's lien was held on Monday, September 11, 2017.

## II.     Legal Standard

Chapter 18 of the Nevada Revised Statutes governs the filing, perfection, validity, and foreclosure of a mechanic's lien. Under Nevada law, a lien claimant – such as a subcontractor on a construction project – has a lienable property interest for the work, materials, and equipment furnished on that project. NRS § 108.222(1). In order to attach and perfect the lien claimant's interest, a lien claimant must record its lienable interest, known generally as a mechanic's lien, on the underlying real property. NRS § 108.226(1). A recorded mechanic's lien must include the terms of the construction contract, if any, and a statement of the total lienable amount after deducting all just credits and offsets. NRS § 108.226(2). If the lien claimant's interest is governed by a contract, then the lien claimant's interest is limited to "the unpaid balance of the price agreed upon for such work, material or equipment." NRS § 108.222(1)(a).

Once a lien claimant has recorded a mechanic's lien, the owner of the property, debtor, or another party in interest may move a court for an order releasing or reducing the mechanic's lien if the movant believes the lien "is frivolous and was made without reasonable cause, or that the amount of the notice of lien is excessive." NRS § 108.2275. "[W]hen a property owner seeks to remove a lien by arguing it is frivolous or excessive, the district court must determine the material facts in order to reach a conclusion regarding whether a lien is frivolous or

excessive." *J.D. Constr., Inc. v. IBEX Int'l Group, LLC*, 240 P.3d 1033, 1035-36 (Nev. 2010). In order to determine the material facts, the court must hold a hearing on the motion "if there is a possibility that the lien will be expunged." *Id*. at 1037. However, "the district court is not required to hold a full evidentiary hearing," instead the court "may base its decision on affidavits and documentary evidence submitted by the parties." *Id*. at 1036. In determining whether a lien is frivolous or excessive, the district court applies a preponderance of the evidence standard. *Id*. at 1043.

After the hearing, a district court has three options. *Id*. at 1038; *see also* NRS § 108.2275(6). The court may find (1) that the lien is frivolous and made without reasonable cause, (2) that the lien is excessive, or (3) that the lien is not frivolous and that the amount is not excessive. NRS § 108.2275(6). If the court finds that the lien is frivolous or made without reasonable cause, the court must expunge and release the lien. NRS § 108.2275(6)(a). If the court finds that the lien is excessive, the court may order the lien reduced to "an amount deemed appropriate by the court." NRS § 108.2275(6)(b). If the court either releases or reduces the lien, the court shall award reasonable attorneys' fees and costs to the party bringing the motion. NRS § 108.2275(6)(a)-(b). However, if the court finds that the lien is not frivolous then the court shall deny the motion and award reasonable attorneys' fees and costs to the lien claimant for defending the motion. NRS § 108.2275(6)(c).

**III.    Discussion**

NRS § 108.222(1)(a) provides in pertinent part that if the lien claimant's interest is governed by a contract, then the lien claimant's interest is limited to "the unpaid balance of the price agreed upon for such work, material or equipment." Here, it is undisputed that there is a subcontract and twenty written change orders between the parties which sets forth an agreed upon price of $6,184,183.00 for Rex Moore's work on the project. SMC contends that Rex Moore has been paid $5,470,580.63 on the project leaving an amount due of $713,602.37. In contrast, Rex Moore contends that it has only been paid $5,437,763.66 as it had not received SMC's most recent alleged payment. The court is unable to determine the exact amount that has been paid to Rex Moore as neither party has provided evidence of alleged recent payments

to Rex Moore. Regardless, the parties agree that at most Rex Moore is only entitled to a remaining payment of $746,415.34 under the agreed upon contract price evidenced by the subcontract and written change orders. Despite this recognition, Rex Moore recorded a mechanic's lien in the amount of $2,117,602.78, approximately three times the amount left to be paid under the parties' agreed upon price.

In its motion, SMC contends that Rex Moore's recording of the mechanic's lien is frivolous and made in bad faith because Rex More knowingly included additional compensation and breach of contract damages which are not lienable under the statute and recognized in its pleadings that it was only owed, at most, $746,415.34 under the agreed upon contract price set forth in the subcontract and written change orders. *See* ECF No. 5.

In opposition, Rex Moore argues that its lien is not frivolous and was not made in bad faith because SMC waived the specific provisions of the subcontract that required written change orders for additional work and specifically recognized that Rex Moore would be compensated for the associated delay damages of over $1 million dollars. *See* ECF No. 15. For example, Rex Moore argues that SMC repeatedly acknowledged as early as January 2017, that Rex Moore would be required to perform accelerated work and that Rex Moore should track its costs and bill SMC when the work was completed even though there were no specific approved written change orders recognizing the additional work. To support its contention, SMC points to a single e-mail by SMC employee Josh Merkow to Rex Moore employee Alan Palmer dated January 26, 2017. ECF No. 16, Ex. 3. In that e-mail, Josh Merkow responded to Alan Palmer's e-mail about tracking costs and possible delay issues by telling Alan Palmer that "tracking [Rex Moore's] costs is a good idea" and to have "[SMC's construction supervisors] sign off tickets as the work is happening so we know they are valid if/when we need to talk about money." *Id*. Rex Moore contends that this e-mail establishes that SMC agreed to pay Rex Moore for delay related costs and damages and waived the subcontract requirement of written change orders for all changes in compensation. Further, Rex Moore contends that it tracked its time and expenses as SMC requested and included those amounts in its lien because they were appropriate work related costs. Thus, Rex Moore argues that once SMC agreed to allow Rex Moore track its

additional expenses, this additional compensation became part of the agreed upon contract price even if it was not specifically identified by any change order and thus, the additional compensation is lienable under Nevada's mechanic's lien statute.

The court disagrees. First, Rex Moore's recorded lien specifically identifies breach of contract damages as part of the requested "additional amounts" owed to Rex Moore. *See* ECF No. 1, Ex. 1. However, breach of contract damages are not lienable under the statute. *See* NRS § 108.222(1)(a). Thus, Rex Moore's own lien statement establishes that the lien requests compensation for aspects of the project outside the scope of the subcontract and which are not lienable under the mechanic's lien statute. As such, Rex Moore's recorded lien is excessive as a matter of law. Second, the court cannot find, based upon the limited evidence and arguments before the court, that the sole January e-mail constitutes a waiver of the subcontract's written change order provision or the agreed upon price for the electrical work by Rex Moore. The e-mail does not specifically mention any waiver of the subcontract and the parties' course of conduct after this e-mail was to continue to enter into written change orders increasing the price to be paid to Rex Moore through August 2017, well after the alleged waiver of this provision took place.

Finally, even if there was a waiver of the written change order requirement, the excessive amount sought by Rex Moore falls outside the mechanic's lien statute as the additional compensation sought by Rex Moore is still above the price specifically agreed to in the subcontract and written change orders. In fact, the language of the mechanic's lien statute is clear that if a contract sets forth a price for work then the only amount that may be sought under a mechanic's lien is that price specifically identified and agreed to in the contract minus received payments. *See* NRS § 108.222(1)(a). Such a strict reading of the statute is supported by binding Nevada Supreme Court precedent. As set forth by the Nevada Supreme Court, "[t]he language of NRS 108.222(1)(a) is not ambiguous. It clearly states that, if a contract exists, the amount of the lien that a contractor or subcontractor has upon the property and improvements is 'the unpaid balance of the price agreed upon.'" *California Commercial Enterprises v. Amedeo Vegas I, Inc.*, 67 P.3d 318, 330 (Nev. 2003). Thus in filing a lien, the

6

Nevada Supreme Court has held that "a lienholder is limited to the contract price when a contract exists." *Id*. This is because "the purpose of the mechanic's lien statute is to provide a speedy remedy to secure 'payment of the claims of builders, mechanics and materialmen out of the property to which their work and material have contributed an increased value.' The speedy nature of the remedy would be frustrated if the court were required to hear evidence regarding the disputed costs of materials, labor, overhead and profit beyond the contract price." *Id*. at 331 (internal citations omitted). Therefore, based on Nevada Supreme Court precedent, Rex Moore's recorded lien is limited to the unpaid amount of the contract price which pursuant to the subcontract and approved change orders is, at most, $746,415.34. However, rather than expunge the lien in its entirety as requested by SMC, the court finds that a reduction in the lien to this amount is appropriate in light of the fact that Rex Moore is entitled under the law for a lien in this amount and the evidence before the court is insufficient to find that Rex Moore recorded the underlying lien in bad faith. Therefore, the court shall grant SMC's motion and reduce the recorded mechanic's lien from $2,117,602.78 to $746,415.34 pursuant to NRS § 108.2275(6)(b).

Because the court has found that the recorded mechanic's lien is excessive, SMC is entitled to seek attorneys' fees pursuant to NRS § 108.2275(6)(b). As such, the court shall also grant SMC leave to file an appropriate motion.

IT IS THEREFORE ORDERED that plaintiff's motion to release or reduce mechanic's lien (ECF No. 5) is GRANTED in accordance with this order. Defendant's mechanic's lien recorded on July 10, 2017, in the amount of $2,117,602.78 is REDUCED to $746,415.34.

IT IS FURTHER ORDERED that plaintiff shall have twenty (20) days after entry of this order to file an appropriate motion seeking attorneys' fees pursuant to NRS § 108.2275(6)(b).

IT IS SO ORDERED.

DATED this 21st day of September, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE